IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 13, 2021 Session

## ESTATE OF MARTHA HARRISON BANE v. JOHN BANE ET AL.

**Appeal from the Chancery Court for Cocke County**
**Nos. 08-189, 2014-CV-103    Telford E. Forgety, Jr., Chancellor**

———————————————————

**No. E2020-00978-COA-R3-CV**

———————————————————

Martha Harrison Bane conveyed an approximately eight-acre tract of land to her son and daughter-in-law in 2003. Several years later, Ms. Bane sought to have the deed set aside on the basis of undue influence. A default judgment was entered against the defendants and the land was re-conveyed back to Ms. Bane by a Clerk and Master's deed. Several years after that, the defendants had the default judgment set aside. The trial court then held a hearing on the original petition to have the deed set aside in February of 2018 and determined that the deed was valid. Ms. Bane's estate appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

Thomas M. Leveille, Knoxville, Tennessee, for the appellant, Estate of Martha Harrison Bane.

Matthew A. Grossman and Rebekah P. Harbin, Knoxville, Tennessee, for the appellees, Anne Bane, John Bane, and Elizabeth Caldwell Kingery, Executor of the Estate of J. Alan Kingery.

**OPINION**

**BACKGROUND**

This is the second appeal in a dispute over a warranty deed conveying approximately eight acres of land in Cocke County, Tennessee. Martha Harrison Bane hailed from Cocke

County and owned a large portion of land in the area. When Ms. Bane's husband died in 1995, Ms. Bane's oldest son, John Bane,[1] began helping Ms. Bane manage her affairs. In John's words, Ms. Bane looked to him to "handle things." For example, John purchased a home for his brother, Phillip Bane, at Ms. Bane's request; she assured John she would pay him back. Although the timeline is unclear from the record, it is undisputed that Ms. Bane also lived in a house owned by John and his wife, Anne Bane, in Virginia[2] for a period of time.

In 1998, Ms. Bane began conveying different tracts of land to various of her eight children. For example, on September 27, 1998, Ms. Bane conveyed a plot to her son Phillip Bane; she also gave plots to daughters Martha Carnes and Elizabeth Annis on May 21, 2003, and April 2, 2004, respectively. Ms. Bane also executed a last will and testament on November 12, 2003. On May 9, 2003, Ms. Bane signed a general power of attorney in favor of John Bane. The power of attorney provided John "full power and authority to do and perform all acts and things whatsoever requisite and necessary to be done . . . as I might or could do if acting personally." On October 20, 2003, Ms. Bane executed the warranty deed which is the impetus of the present case, thereby conveying the eight acres of land in Cocke County to John and Anne Bane. On that same day, Ms. Bane also executed another warranty deed conveying a tract of real property in the same area to a different son, Thomas Bane.[3]

At some point during 2005, Thomas Bane visited his mother and John Bane at the old family home in Cocke County. Thomas found them looking over a plot map of the family land. According to Thomas, the relationship between John and Ms. Bane was still copasetic on this occasion. Thomas testified that Ms. Bane and John were discussing John's plans for his tract of land, specifically that John wanted to clear the area and develop an RV park. Thomas' undisputed testimony established that Ms. Bane was amenable to and knowledgeable about this plan. On the day Thomas visited in 2005, Ms. Bane instructed John to take Thomas and his wife, Mary Bane, driving around the property to view John's progress. According to Thomas, everything was "very, very positive" on this occasion and overall.

Sometime after this point, however, relationships within the Bane family deteriorated. According to testimony at trial, Ms. Bane and John were very close until approximately 2006, when two of Ms. Bane's other sons, David Bane and Roy Bane, became more actively involved in Ms. Bane's affairs. While John had always been the son to assist Ms. Bane, a rift formed in the family, after which Roy primarily managed Ms. Bane's finances and land. Thomas Bane was told he had to ask permission from Roy before

---

[1] Because several of the parties to this case have the same last name, first and last names are used for clarity.

[2] John and Anne Bane reside in Blue Ridge, Virginia.

[3] This fact is undisputed; however, the deed to Thomas Bane and his wife does not appear in the record.

visiting Ms. Bane and that anything "concern[ing] [Ms. Bane's] affairs need[ed] to go through" Roy. Although the timeline is not entirely clear from the record, the parties agree that John's power of attorney was eventually revoked and that Roy Bane became Ms. Bane's power of attorney. Additionally, Thomas and John both testified at trial that David Bane assaulted John Bane at some point in 2006 over the land transactions. Around this time, Roy and David Bane also helped Ms. Bane create an irrevocable trust of which Roy was the trustee.[4]

In the meantime, John and Anne Bane executed a deed of trust for $250,000.00 in favor of Anne's father, J. Alan Kingery, on June 20, 2007. This deed of trust was secured by the eight-acre tract in Cocke County. It is undisputed that John and Anne borrowed money from Mr. Kingery but made no payments on the debt. John testified at trial, however, that the debt had not been paid because he and Anne continued to borrow money from Mr. Kingery, including money for their attorney's fees in this cause.

On December 15, 2008, Ms. Bane filed a complaint for "cancellation of deed" against John and Anne Bane in the trial court. The complaint alleged that John exerted undue influence over Ms. Bane and fraudulently induced her to convey real property to them in 2003. As explained in the first appeal of this case,

> Ms. Bane asserted, inter alia, that at the time of the Property's transfer in 2003, John Bane was acting as her attorney-in-fact. Ms. Bane alleged that John Bane falsely represented that she needed to sign the deed transferring title to the Property to Defendants as part of Ms. Bane's estate plan. Ms. Bane further alleged that Defendants informed her the deed would be placed in a lock box and would not be recorded until after her death. According to Ms. Bane, she had no intention of transferring title for the Property to Defendants at the time she signed the deed; rather, she intended for them to receive it only following her death.

> Ms. Bane further asserted that upon her discovery of the transfer of the Property, she revoked the power of attorney granted to John Bane and demanded that he and his wife convey title back to her. Upon John Bane's refusal to do so, Ms. Bane filed this action, seeking title to the Property, damages, and an award of attorney's fees. A copy of the deed transferring the Property to Defendants was attached to the complaint.

*Bane v. Bane*, No. E2018-00790-COA-R3-CV, 2019 WL 2714081, at *1 (Tenn. Ct. App. June 28, 2019).

---

[4] The trial court noted at the final hearing that Roy Bane, acting pro se, had attempted to intervene in the present case several times.

The same day the complaint was filed, an "Order of Publication" was signed and issued by the Clerk and Master. This order provided that "personal service cannot be had upon [John and Anne Bane,]" and that "service of process by publication" was in order. Notice of Ms. Bane's suit was then published in the Newport Plain Talk on December 16, 2008, December 23, 2008, December 30, 2008, and January 6, 2009.

Ms. Bane filed a motion for default judgment on February 9, 2009, alleging that John and Anne Bane were served by publication and had been mailed a copy of the order allowing service by publication. The trial court granted Ms. Bane's motion on March 23, 2009, thereby setting aside the 2003 warranty deed to John and Anne Bane. On April 7, 2009, a Clerk and Master's deed was issued to Ms. Bane re-conveying the eight-acre tract back to her. Subsequently, on or about August 3, 2010, John and Anne Bane appeared in the trial court regarding court costs for the 2008 action. The only indication as to what happened at this hearing is an order providing that John and Anne appeared on a motion to compel and were assessed $397.50 in court costs.

Then, on August 27, 2014, Ms. Bane filed a second action in the trial court. This complaint was titled "Complaint to Cancel Deed of Trust," and named John and Anne Bane, as well as Mr. Kingery, as defendants. This time,

> Ms. Bane alleged that on June 20, 2007, Defendants had executed a Deed of Trust in favor of Mr. Kingery in the amount of $250,000, which required no payments and set forth no associated interest rate. According to Ms. Bane, Mr. Kingery did not pay any money to Defendants upon the execution of the deed of trust. Rather, Ms. Bane alleged that the trust deed was executed to create a cloud on the title to the [p]roperty [deeded to John and Anne]. Ms. Bane sought to have the deed of trust set aside.

*Id.*

On November 19, 2014, John and Anne Bane filed a motion to have the March 2009 default judgment set aside. Mr. Kingery also filed a motion to intervene in the first action. The trial court held a hearing on March 11, 2015, at which the motion to set aside the default judgment was granted. "Rather than granting Mr. Kingery's motion to intervene in the first action, the trial court consolidated the first action with the second action, which permitted Mr. Kingery to proceed as a named party and rendered the motion to intervene moot." *Id.* at *2. With the default judgment against John and Anne Bane set aside, Ms. Bane's first and second actions were then left pending. Stated differently, the case then before the trial court was Ms. Bane versus John Bane, Anne Bane, and Mr. Kingery (hereinafter together, "Defendants"). Ms. Bane wanted both the 2003 warranty deed and the 2007 deed of trust set aside.

A lengthy discovery dispute ensued. Ms. Bane was sanctioned twice by the trial

4

court for failing to cooperate in discovery, and the parties had great difficulty in scheduling Ms. Bane's deposition. Although Ms. Bane maintained that her advanced age and deteriorating health prevented her from sitting for long periods of time, Defendants characterized this as a delay tactic. After being ordered by the trial court to appear for a deposition, Ms. Bane was deposed for approximately two hours in 2016; however, Ms. Bane's counsel terminated the deposition early. Ms. Bane was again deposed on June 6, 2017, although Roy Bane ended the deposition after two hours. Dissatisfied at being unable to complete their deposition of Ms. Bane, Defendants eventually filed a motion to dismiss the case outright.

A final hearing was held on February 6, 2018. Despite being subpoenaed by Defendants, Ms. Bane did not appear at trial.[5] Ms. Bane's counsel maintained that Ms. Bane was unavailable due to her age and deteriorating health and sought to have her deposition submitted in lieu of her live testimony. Defendants objected, arguing that Ms. Bane continued to engage in delay tactics and that nothing had been filed establishing that Ms. Bane was in fact unavailable. The trial court determined that outright dismissal was not warranted, but ruled that in light of Ms. Bane's history of failing to cooperate in completing the deposition and her failure to appear at trial, the deposition would be excluded. Accordingly, the only witnesses at trial were John Bane and Thomas Bane.

The trial court entered its final order on February 12, 2018, finding in favor of Defendants. As explained in *Bane I*, the trial court's order provided, as relevant:

> The Court has listened to the evidence, which by the way is really in many respects confusing and just terribly convoluted, the dealings between the parties, terribly convoluted, but at the end of the day the Court is constrained to dismiss the complaint. The Court will explain its reasoning.
>
> First of all, [Ms. Bane] claims that Mr. John Bane held a power of attorney for Martha Harrison Bane, which he did for sure, held a power of attorney which was dated May 9, 2003. The deed made from Martha Harrison Bane to John Bane was dated . . . October 20, 2003. John Bane held a deed of trust, or rather a power of attorney for his mother Martha Bane certainly in October of 2003. From the record here, the Court cannot find that there had been any use of the power of attorney between the time it was granted in May of 2003 and the time the deed was made in October of 2003.
>
> There may have been use of the power of attorney after that, but there's no evidence in the record here that there was use of the power of attorney between May and October. Accordingly, I don't think the presumption of undue influence by reason of a confidential relationship between John Bane

---

[5] Ms. Bane was approximately 94 at the time of trial.

and Martha Bane, I don't think that presumption arises with respect to this transaction.

       I also note that there's no evidence in the record that the power of attorney was used in connection with the very deed at issue. Martha Bane signed the deed herself. John Bane did not sign the deed as power of attorney for Martha Bane as grantor and himself as grantee. Martha Bane herself signed it.

*      *      *

       Perhaps more importantly to the Court, there are a series of deeds in the record beginning with Exhibit 15 and running through Exhibit 19, deeds where -- deeds of gift, that's what they're styled, deeds of gift where Martha Bane made deeds of gifts for real property to some of her children, particularly Exhibit 15, a deed from Martha Bane to Philip Bane, one of her sons.

*Id.*

       Ultimately,

       the court dismissed Ms. Bane's claims with prejudice. The Clerk and Master's deed executed in 2009, which had conveyed title for the Property to Ms. Bane, was set aside, as well as subsequent deeds conveying the Property to the Martha Bane Trust. The court specifically upheld the deed from Ms. Bane to Defendants and the deed of trust in favor of Mr. Kingery.

*Id.*

       While it is undisputed that Ms. Bane then filed a motion to alter or amend, this motion is not contained in the record. The order denying the motion is, however, contained in the record, and provides that the motion was heard March 14, 2018. The trial court denied Ms. Bane's motion, explaining that her request to "[r]eopen [p]roof and [a]lter or [a]mend [j]udgment" was not well taken. The transcript of the hearing reflects that Ms. Bane requested the trial court accept "late evidence," namely, a document purportedly signed by John Bane, as Ms. Bane's power of attorney, in 2003. Essentially, Ms. Bane asked the trial court to reconsider its decision that no presumption of undue influence arose as to the 2003 deed to John and Anne Bane because John Bane was acting as Ms. Bane's power of attorney at that time.

       After her post-trial motion was denied, Ms. Bane appealed to this Court; however, the *Bane I* court concluded that the order setting aside the 2009 default judgment did not contain sufficient legal analysis. We explained:

6

> [T]he motions seeking to have the default judgment set aside are not included in the appellate record before us. However, inasmuch as the default judgment had become final, we presume that the motions were filed pursuant to Tennessee Rule of Civil Procedure 60.02 rather than Rule 59 or 54. That being considered, the record contains no other information concerning the legal basis for the motions or whether such motions were timely filed. The motions were clearly not filed within one year of the grant of default judgment, and the trial court made no findings regarding whether the motions were filed within a reasonable time or whether the underlying judgment was void. In fact, the trial court's order contains no discussion of the timeliness of the motions whatsoever.
>
> Due to the absence of sufficient factual findings and legal conclusions in the trial court's order setting aside the default judgment, we conclude that the trial court's March 30, 2015 order setting aside the default judgment should be vacated.

*Id.* at *6–7.

Accordingly, we vacated the trial court's order and remanded this case with instructions to enter sufficient findings of fact and conclusions of law as to the legal basis for setting aside the default judgment, "or, in the alternative, reconsideration of that order." *Id.* at *7. Ms. Bane died during the pendency of the first appeal and Roy Bane, as executor of Ms. Bane's estate (hereinafter "Plaintiff"), was substituted.

The trial court entered findings of fact and conclusions of law on June 25, 2020, ruling that the order setting aside the 2009 default judgment should stand because: 1) personal service was never attempted and no summonses were ever issued or returned; 2) the notice by publication was invalid because Plaintiff did not comply with the relevant statutes; 3) Defendants did not waive the right to challenge process and jurisdiction by appearing for the hearing on costs in 2010; and 4) Mr. Kingery was a necessary and indispensable party to the first action due to the deed of trust on the subject property. The trial court found that "[Ms. Bane's] aim was to divest title from the Defendant[s] and to re-vest it in herself[,]" and concluded that Defendants were not prohibited from bringing their Rule 60.02 motion because "the reasonable time requirement [of that rule] does not apply to a void judgment." From this order, Plaintiff timely re-appealed to this Court.

However, the trial court's order remained nonfinal. While the June 25, 2020 findings of fact and conclusions of law explained the trial court's decision to set aside the 2009 default judgment, the order failed to "deal with the ultimate issues in the case." Consequently, the parties requested this Court extend the remand in order for the trial court to enter yet another order. On February 12, 2021, the trial court entered another order providing:

7

After the Court set aside the default judgment on March 30, 2015 it conducted a trial on the merits of the consolidated cases, and made extensive findings of fact and conclusions of law. *See* "Final Order" of February 12, 2018; "Correction of Final Order" dated February 16, 2018; and "Order with Regard to Plaintiff's Motion to Reopen Proof and Alter or Amend Judgment and for New Trial" dated April, 2018. *See also*, *Roy Andrew Bane, Executor v. John Bane, et al*, Tenn. Ct. App. No. E2018-00790-COA-R3-CV, slip op. (June 28, 2019) at p.p. 3-5. Under these circumstances, it is not appropriate or necessary to re-try the case on the merits.

It is, therefore, ORDERED and ADJUDGED that the Court reaffirms its prior: "Final Order which constituted the first final judgment of this Court, entered February 12, 2018 along with its findings of fact and conclusions of law; "Correction of Final Order" entered February 16, 2018; and "Order with Regard to Plaintiffs Motion to Reopen Proof and Alter or Amend Judgment and for New Trial," entered April 2, 2018, all of which were the subject of Plaintiff's prior appeal. It is, further,

ORDERED that the Court expressly finds that this Order and Judgment resolves all matters placed at issue among all parties to this cause and therefore constitutes the Final Judgment of this Court.

The parties are now before this Court for the second time.

## ISSUES

Plaintiff raises the following issues on appeal, which are restated slightly:

1. Whether the trial court erred in setting aside the 2009 default judgment entered against John and Anne Bane.

2. Whether the trial court erred in excluding the deposition of Ms. Bane at trial.

3. Whether the trial court erred in concluding that no confidential relationship existed between John Bane and Ms. Bane.

4. Whether the trial court erred in concluding that even if a confidential relationship existed between John Bane and Ms. Bane, John Bane rebutted the presumption of undue influence at trial.

5. Whether the deed of trust executed in favor of Mr. Kingery is void for lack of consideration.

6.      Whether the trial court erred in denying Plaintiff's "Motion to Reopen Proof or to Alter or Amend the Judgment."

## DISCUSSION

### *a. The default judgment*

A trial court's decision on a motion to set aside a final judgment is ordinarily reviewed for an abuse of discretion. *In re Beckwith Church of Christ*, No. M2015-00085-COA-R3-CV, 2016 WL 5385853, at *3 (Tenn. Ct. App. Sept. 23, 2016) (citing *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012)). Our Supreme Court has held, however, that when the basis of the motion is that the judgment is void, review is *de novo* with no presumption of correctness. *Turner v. Turner*, 473 S.W.3d 257, 269 (Tenn. 2015); *see also Hussey v. Woods*, 538 S.W.3d 476, 483 (Tenn. 2017).

Upon remand from this Court, the trial court entered an order clarifying that the 2009 default judgment was set aside for two reasons. First, that personal service was never attempted on John and Anne Bane, despite Plaintiff knowing where they lived,[6] and that service by publication was not properly effectuated. Accordingly, the trial court concluded that it never established personal jurisdiction over John and Anne Bane. Second, the trial court determined that based on the 2007 deed of trust, Mr. Kingery was an indispensable party and should have been named in Ms. Bane's first lawsuit to set aside the 2003 warranty deed.

Plaintiff does not challenge the trial court's finding that the 2009 judgment is void for lack of personal jurisdiction;[7] rather, Plaintiff argues that the "exceptional

---

[6] Indeed, Ms. Bane lived with John and Anne Bane in Virginia for some time.

[7] Nor do we take issue with this holding, as the record shows substantial issues with the process and service of process of Ms. Bane's first complaint. For instance, with regard to service by mail, no summonses were ever issued or returned. *See* Tenn. R. Civ. P. 4.05, 4.04(10). As for service by publication, Tennessee Code Annotated section 21-1-203 provides that in chancery court, "personal service of process may be dispensed with" when "the defendant is a nonresident of this state." Subsection (b) provides, however, that "[t]o dispense with process in any of the cases listed in subsection (a), the facts shall be stated under oath in the bill, or by separate affidavit, or appear by the return." Tenn. Code Ann. § 21-1-203(b); *see also* Tenn. Code Ann. § 21-1-205 (explaining additional requirements when publication is made for a nonresident defendant). Because service of process has due process implications and is not perfunctory, constructive notice by publication must still be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Beckwith Church of Christ*, No. M2015-00085-COA-R3-CV, 2016 WL 5385853, at *3 (Tenn. Ct. App. Sept. 23, 2016) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In accordance with due process, our Supreme Court has explained that "constructive service by publication should be viewed as a last resort means of serving a party whose identity is known." *Turner v. Turner*, 473 S.W.3d 257, 273 (Tenn. 2015). Here, the trial court found that Plaintiff failed to comply with the statutory requirements allowing for service by publication mentioned above, and that service of process overall was not reasonably calculated in this case. Despite Plaintiff not having challenged this finding on

circumstances" doctrine applies such that the void judgment should stand.

Our Supreme Court articulated the exceptional circumstances doctrine in *Turner v. Turner*, 473 S.W.3d 257 (Tenn. 2015). In that case, the father of minor children sought to terminate the parental rights of the children's mother following a divorce and custody dispute. *Id.* at 261. The mother struggled with substance abuse and was absent from the children's lives for an extended period of time. *Id.* at 262. The father maintained that he did not know mother's whereabouts, and notice of the case was published for four consecutive weeks in a Somerville, Tennessee newspaper. *Id.* at 263–64. The mother never answered the petition, and a default judgment terminating her parental rights was entered on December 17, 2001. *Id.* at 264. On July 29, 2010, the mother filed a Rule 60.02 motion asking that the judgment be set aside as void for lack of personal jurisdiction. *Id.* After holding a hearing at which it was established, *inter alia*, that the father had contact information for mother's relatives, the trial court set aside the 2001 judgment. *Id.* at 267. Father appealed to this Court. We affirmed the trial court's decision but did so "reluctantly," noting the "profound consequences" for the children. *Id.* at 268.

On appeal to the Supreme Court, the father argued that "the trial court acquired personal jurisdiction over Mother through constructive service by publication." *Id.* at 271. The Court disagreed, however, noting that "constructive service by publication is permissible only if it is accomplished in a manner reasonably calculated to give a party defendant adequate notice of the pending judicial proceedings[.]" *Id.* at 272. The Court further elucidated that "constructive service by publication should be viewed as a last resort means of serving a party whose identity is known[,]" and that "a plaintiff who resorts to constructive service by publication must comply *meticulously* with the governing [Tennessee] statutes." *Id.* at 273–74 (emphasis in original). Insofar as neither the face of the judgment itself nor the record established that the father made diligent efforts to locate the mother, the Supreme Court held that the judgment terminating the mother's parental rights was void. *Id.* at 276. The Court also clarified that void judgments may be attacked at any time pursuant to Rule 60.02(3). *Id.* at 279.

The Court then explained, however, that "relief from a void judgment may be denied if certain exceptional circumstances exist." *Id.* Drawing on the Restatement (Second) of Judgments and the holdings of other jurisdictions, the Court concluded that relief from a void judgment may be denied where "(1) [t]he party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and (2) [g]ranting the relief would impair another person's substantial interest of reliance on the judgment." *Id.* at 280. The Court expounded further:

---

appeal, we note out of an abundance of caution that we agree with the trial court's ruling. We also note that the attorney representing the Plaintiff on appeal was not the trial attorney.

The essential point is that parties to a dispute may resolve it not only by adjudication but by contract or concord, express or implied by conduct giving rise to an estoppel. Such a concord may be reached not only by direct communication with that purpose in view, but also by manifestation of intention concerning the matter in dispute. A judgment purporting to determine the rights of the parties, though lacking effect of its own force because of invalidity, can thus be adopted as a consensual resolution of the parties' rights. The party who obtained the judgment expresses his assent to the terms by obtaining the judgment; the other party expresses adherence by some act following the judgment in which the judgment is recognized as determinative.

*Id.* at 281 (quoting Restatement (Second) of Judgments § 66 (1982)). The case was then remanded for the trial court to determine whether exceptional circumstances existed such that the void judgment should stand.

Here, Plaintiff argues that the exceptional circumstances doctrine saves the 2009 default judgment against John and Anne Bane. Plaintiff asserts that the length of time between the entry of the judgment and Defendants' action to set it aside, plus the Defendants' appearance at the 2010 cost hearing, amount to a manifestation of Defendants' assent that the judgment was valid. Plaintiff states in his brief that "[t]he Defendants, when appearing at the hearing seeking to enforce terms of the default judgment, would be expected to deny the effect of the judgment but [did] not do so."

We disagree. Exceptional circumstances, as contemplated by the *Turner* Court, are not present in this case. *See In re Prince J.*, No. E2016-00479-COA-R3-PT, 2017 WL 6026738, at *4 (Tenn. Ct. App. Dec. 5, 2017) (exceptional circumstances existed such that judgment terminating mother's parental rights was not set aside where children were well adjusted in adoptive home and mother conceded she knew about adoption and how to contact family); *In re Brooklyn J.*, No. E2016-00482-COA-R3-PT, 2017 WL 6027813, at *4 (Tenn. Ct. App. Dec. 5, 2017) (same). The *Turner* Court was clear that "silence is not a manifestation of assent," 473 S.W.3d at 281, and "mere delay does not preclude an attack on a void judgment." *Beckwith Church of Christ*, 2016 WL 5385853, at *5. Accordingly, we are unconvinced that Defendants' delay in seeking to set aside the default judgment warrants application of the exceptional circumstances doctrine. This is especially true in light of the fact that service of process on Defendants was defective, and it is unclear what Defendants actually knew about the lawsuit and when they knew it.[8]

Neither are we persuaded that the trial court's 2010 order assessing Defendants court costs is dispositive. Aside from this order, which provides only that Defendants

---

[8] There was no testimony about this at trial.

11

appeared and were required to pay costs, there is nothing in the record establishing what happened at the 2010 hearing. In the absence of any further information as to what transpired at that hearing, we cannot reach the conclusion that Defendants *"*fail[ed] to protest the judgment" and that such failure "can be taken as an affirmation of the judgment." *Turner*, 473 S.W.3d at 281. A single order, containing scant information, does not amount to exceptional circumstances.

We are likewise unpersuaded that granting Defendants relief from the void judgment impairs another person's reliance on the judgment to an exceptional degree. While Plaintiff claims in his brief that Ms. Bane was prejudiced by the inability to appear at trial, this was Ms. Bane's choice. As detailed above, Defendants attempted to take Ms. Bane's deposition several times, and there is no indication Plaintiff ever took the opportunity to depose Ms. Bane for proof despite her advanced age and health problems. Consequently, we are unconvinced that the exceptional circumstances doctrine, as outlined in *Turner*, saves the 2009 judgment.

The 2009 default judgment is void for lack of personal jurisdiction, and the exceptional circumstances doctrine does not apply. Consequently, we affirm the trial court's decision to set the judgment aside. In light of this conclusion, we need not reach the issue of whether the trial court erred in holding that the judgment should also be set aside for Plaintiff's failure to join Mr. Kingery as a party to the first action.

### b. Ms. Bane's deposition

Plaintiff next argues that the trial court erred in excluding the deposition testimony of Ms. Bane. A trial court's evidentiary determinations are reviewed for an abuse of discretion. *DePasquale v. Chamberlain*, 282 S.W.3d 47, 57 (Tenn. Ct. App. 2008) (citing Brown v. Daly, 83 S.W.3d 153, 157 (Tenn. Ct. App. 2001)); *see also Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 284 (Tenn. Ct. App. 2012) (applying the abuse of discretion standard to determine whether the trial court erred in excluding deposition testimony). Further,

> An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). Reviewing courts cannot make this determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 106 Tenn. 450, 452, 61 S.W. 766 (1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986); *Harwell v.*

12

*Walton*, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991). Appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833-34 (Tenn. Ct. App. 1997).

*Hampton v. Braddy*, 270 S.W.3d 61, 65 (Tenn. Ct. App. 2007) (quoting *Thompson v. City of LaVergne*, No. M2003-02924-COA-R3-CV, 2005 WL 3076887, at *9 (Tenn. Ct. App. Nov. 16, 2005), *perm. app. denied* (Tenn. Apr. 24, 2006)).

Here, Plaintiff made no offer of proof as to the excluded testimony. Accordingly, we are unable to review the excluded evidence and thus cannot determine whether its exclusion "would have affected the outcome of the trial had it been admitted." *Hampton*, 270 S.W.3d at 65 (citing *Pankow*, 737 S.W.2d at 298); *see also Citadel Investments v. White Fox Inc.*, No. M2003-00741-COA-R3-CV, 2005 WL 1183084, at *11 (Tenn. Ct. App. May 17, 2005) (issue of excluded deposition waived where no offer of proof was made and deposition was not in the record).[9]

In the absence of Ms. Bane's deposition, we are unable to consider whether its exclusion was reversible error. This issue is waived. *See Citadel Investments*, 2005 WL 1183084, at *11.

### c. The 2003 warranty deed

Plaintiff's next two issues address whether the 2003 deed to John and Anne Bane should be set aside for having been made under undue influence. Whether undue influence has occurred is a question of fact, and, "[a]s such, an appellate court must 'affirm the trial court's finding of undue influence unless the evidence preponderates otherwise.'" *Ellis v. Duggan*, No. E2020-00723-COA-R3-CV, 2021 WL 4128841, at *23 (Tenn. Ct. App. Sept. 10, 2021) (quoting *Jarnigan v. Moyers*, 568 S.W.3d 585, 591 (Tenn. Ct. App. 2018)).

"The dominant rule in Tennessee and elsewhere is that the existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, gives rise to a presumption of undue influence that may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Ellis*, 2021 WL 4128841, at *22 (quoting *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn.

---

[9] In *Singh*, 390 S.W.3d at 286, this Court noted that "an offer of proof is not needed when the substance of the evidence and its reason for exclusion are apparent from the context." (citing *Gillum v. McDonald*, No. M2003-00265-COA-R3-CV, 2004 WL 1950730, at *5 (Tenn. Ct. App. Sept. 2, 2004)). Here, however, Plaintiff has not argued that this exception applies, and in fact has made no argument as to why the issue of the excluded deposition is not waived. Despite Defendants arguing in their principal brief that Plaintiff failed to make an offer of proof, Plaintiff also fails to address this in his reply brief.

13

1995)) (internal quotations omitted). A confidential relationship arises, as a matter of law, where an "unrestricted power of attorney is granted to the dominant party." *Parish v. Kemp*, 179 S.W.3d 524, 531 (Tenn. Ct. App. 2005) (quoting *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002)). However,

> [n]o confidential relationship arises when an unrestricted power of attorney is executed but has not yet been exercised. *Childress*, 74 S.W.3d at 329. A power of attorney is restricted and a confidential relationship does not exist as a matter of law when the power of attorney never came into effect and the person granting the power of attorney may alter or revoke it at any time. *McKinley v. Holt*, No. 03A01-9807-PB-00220, 1999 WL 233400, at *4, 1999 Tenn. App. LEXIS 247, at *12 (Tenn. Ct. App. Apr.15, 1999); *see also Smith v. Smith*, 102 S.W.3d 648, 653 (Tenn. Ct. App. 2002).

*Parish*, 179 S.W.3d at 531.

The burden to establish a confidential relationship is on the party alleging its existence. *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978). Once a confidential relationship is established and the presumption of undue influence arises, the burden shifts to the dominant party to establish that the transaction at issue was fair. *Parish*, 179 S.W.3d at 531 (citing *In re Estate of Hamilton*, 67 S.W.3d 786, 793 (Tenn. Ct. App. 2001)). Fairness must be proven by clear and convincing evidence. *Id.* As direct evidence of undue influence is rare, undue influence is often established through the existence of "suspicious circumstances." *Ellis*, 2021 WL 4128841, at *23 (citing *Jarnigan*, 568 S.W.3d at 591). By the same token, the presumption of undue influence can be rebutted by showing the absence of suspicious circumstances. *Id.* (citing *In re Estate of Lipscomb*, No. W2018-01935-COA-R3-CV, 2020 WL 1549596, at *11 (Tenn. Ct. App. Apr. 1, 2020)). Relevant circumstances include:

> (1) the decedent's advanced age and/or physical or mental deterioration; (2) the dominant party's active involvement in the transactions at issue; (3) secrecy concerning the transaction's existence; (4) the lack of independent advice; (4) the decedent's illiteracy or blindness; (5) the unjust or unnatural nature of the transaction; (6) the decedent being in an emotionally distraught state; (7) discrepancies between the transaction and the decedent's expressed intentions; and (8) fraud or duress directed toward the decedent.

*Id.*

Here, the parties first dispute whether a confidential relationship existed between John Bane and Ms. Bane. While it is undisputed that John Bane held an unrestricted general power of attorney for his mother, Defendants maintain on appeal that the power of

attorney was unexercised. The principle that an unexercised power of attorney does not give rise to a confidential relationship comes from *Childress v. Currie*, 74 S.W.3d 324 (Tenn. 2002). In that case, our Supreme Court explained that "an unexercised power of attorney does not in and of itself create a confidential relationship. . . . [t]he core definition of confidential relationship requires proof of dominion and control." *Id.* at 329. In *Childress*, the decedent had a power of attorney drafted in favor of Ms. Currie without Ms. Currie's knowledge, and Ms. Currie did not learn about the power of attorney until after its execution. *Id*. at 327. Additionally, Ms. Currie did not execute the documents at issue in that case as the decedent's power of attorney. *Id.* at 330. Accordingly, the Court determined that "there [was] no basis for finding that a confidential relationship gave rise to a presumption of undue influence under the facts" of that case. *Id.*

While Defendants argue on appeal that Ms. Bane's power of attorney in favor of John Bane was never exercised, the record reflects otherwise. John Bane candidly admitted at trial that he used the power of attorney to sell a piece of his mother's property.[10] Plaintiff also introduced a handwritten "IOU" from Ms. Bane to someone named David Mayfield. This document was dated May 20, 2006, and featured John Bane's signature with the notation "POA" next to it. Inasmuch as John Bane conceded at trial that he had exercised the power of attorney, the evidence preponderates against the trial court's finding that a confidential relationship between John and Ms. Bane never arose. Accordingly, this relationship, plus the 2003 transaction between Ms. Bane and John Bane, gives rise to a presumption of undue influence. *See Parish*, 179 S.W.3d at 531 ("'[T]he presumption of undue influence extends to all dealings between persons in fiduciary and confidential relations, and embraces gifts, contracts, sales, releases, mortgages and other transactions by which the dominant party obtains a benefit from the other party.'" (quoting *Gordon v. Thornton*, 584 S.W.2d 655, 658 (Tenn. Ct. App. 1979))).

Nonetheless, Defendants clearly and convincingly rebutted this presumption at trial by establishing a complete absence of suspicious circumstances surrounding the 2003 deed. *See Ellis*, 2021 WL 4128841, at *23. Both John Bane and Thomas Bane testified that as of 2003, the relationship between John and his mother was open and loving. The trial court found that Thomas Bane's testimony was particularly credible. Further, the record reflects that around the same time Ms. Bane conveyed the eight-acre tract to John and Anne, she was taking other estate planning actions. For instance, in the years before and after the conveyance to John, Ms. Bane conveyed similarly sized tracts to some of her other children. Ms. Bane conveyed land to two of her daughters in 2003 and 2004, respectively, and on the same day of the conveyance to John and Anne, Ms. Bane executed a separate deed conveying land to Thomas. Ms. Bane also executed her will and the power of attorney in 2003. According to Thomas and John, this was all part of Ms. Bane's attempt to get her affairs in order. Further, the deed to John and Anne Bane was not executed by John as power of attorney, but was signed by Ms. Bane herself. There is no indication John Bane

---

[10] It was unclear from John's testimony when this sale actually occurred.

was present when the deed was executed, nor is there any evidence suggesting Ms. Bane's state of mind, emotional state, or overall health was questionable at the time the deed was executed. The record is essentially silent as to the circumstances of the deed's actual execution, and Ms. Bane's contemporaneous actions suggest the deed's execution was not suspicious. This conclusion is also buttressed by Thomas Bane's testimony that even two years after the deed was executed, Ms. Bane discussed the conveyance openly with her sons and was involved in John Bane's plan to turn the plot into an RV park.

Nothing in the record suggests that the 2003 deed to John and Anne Bane was borne of undue influence. On the contrary, the record clearly establishes that "suspicious circumstances" began to arise after Roy Bane became involved in his mother's affairs in approximately 2006 and 2007. The testimony of Thomas Bane, which was found exceptionally credible by the trial court, corroborates this.

Because Defendants, by clear and convincing evidence, rebutted the presumption of undue influence as to the 2003 warranty deed, the trial court did not err in dismissing Plaintiff's petition to set the deed aside. Accordingly, the 2003 deed is valid and the tract at issue belongs to John and Anne Bane. That said, Plaintiff's issue regarding the 2007 deed of trust executed in favor of Mr. Kingery is pretermitted as moot, and Plaintiff has no standing to contest the deed of trust.

*d. Plaintiff's motion to alter or amend*

The final issue before us is whether the trial court erred in denying Plaintiff's "Motion to Reopen Proof or to Alter or Amend the Judgment." A trial court's ruling on a motion to alter or amend is reviewed for an abuse of discretion. *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008) (citing *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003)). Because the motion itself is not contained in the record, we can only surmise as to Plaintiff's precise requests for relief. Based on the hearing transcript, the order denying the motion, and Plaintiff's brief, however, it seems Plaintiff's primary request was that the trial court allow Plaintiff to enter a previously omitted piece of evidence – a document purportedly signed by John Bane in 2003 as Ms. Bane's power of attorney. Plaintiff asserts in his brief that "granting the Motion would have prevented a manifest injustice based on the erroneous finding of the trial court that Power of Attorney had not been exercised."

Having already concluded that the trial court erred in determining John Bane never exercised the power of attorney, this argument is inapposite. Moreover, "to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, 'it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence.'" *Burris v. Burris*, 512 S.W.3d 239, 248 (Tenn. Ct. App. 2016) (quoting *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983)). Plaintiff has made no such

showing and makes no argument on appeal as to why this evidence was not presented at trial, despite the lengthy discovery period prior to the final hearing. The trial court did not abuse its discretion in denying Plaintiff's motion.

## CONCLUSION

The ruling of the Cocke County Chancery Court is affirmed. Costs of this appeal are assessed to the appellant, the Estate of Martha Harrison Bane, execution for which may issue if necessary.

_____

KRISTI M. DAVIS, JUDGE