**Robin Dianne Denton HAMPTON**

v.

**Carole Hampton BRADDY, et al.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 7, 2007 Session.

Oct. 5, 2007.

Permission to Appeal Denied by Supreme Court April 7, 2008.

Wm. Kennerly Burger, Murfreesboro, Tennessee for the Appellants, Carole Hampton Braddy and Casey Kenyon Hampton.

Michael W. Binkley, Nashville, Tennessee for the Appellee, Robin Dianne Denton Hampton.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Robin Dianne Denton Hampton ("Wife") sued Casey Kenyon Hampton ("Husband") for divorce. In a separate suit, Wife sued Carole Hampton Braddy, her mother-in-law, seeking a determination regarding Wife's rights to the house that Husband and Wife resided in prior to the filing of the divorce ("the House"). Wife's two law-suits were consolidated. The Trial Court entered a Final Decree of Divorce that *inter alia*, granted Wife a divorce and approved the Marital Dissolution Agreement ("MDA") executed by Husband and Wife. Wife's suit against Ms. Braddy was tried before a jury and the Trial Court entered judgment on the jury's verdict awarding Wife a judgment against Ms. Braddy of $99,200. Husband and Ms. Braddy filed motions to alter or amend or for a new trial, which the Trial Court denied. Husband and Ms. Braddy appeal raising issues regarding the exclusion of evidence at trial, whether the Trial Court erred in awarding an in personam judgment against Ms. Braddy, whether the Trial Court erred in granting the divorce when the MDA failed to describe the real estate issues involved in the companion lawsuit regarding the House, and whether the Trial Court erred in refusing to allow Husband to assert an interest in the House at trial. We affirm.

## Background

Wife and Husband were married in 1993. In January of 2005, Wife filed for divorce. Wife also filed a separate lawsuit against Ms. Braddy seeking a determination of Wife's rights to the House located on real property owned by Ms. Braddy. The mortgage on the House was in Wife's and Ms. Braddy's names at the time of the filing of the divorce action. Wife's two lawsuits were consolidated and the Trial Court entered an order holding, *inter alia*, that the two cases would be "tried as one lawsuit...."

The Trial Court entered a Final Decree of Divorce on January 18, 2006, *inter alia*, granting Wife a divorce and approving the MDA executed by Husband and Wife. Wife's lawsuit on the House against Ms.

Braddy was tried before a jury on January 20, 2006.

At the trial on the House, the parties stipulated that the fair market value of the subject real property including the land and the house was $420,000; the fair market value for the land only was $154,800; the mortgage on the property was $166,000; and the equity in the House itself was $99,200.

At trial, Wife testified that she and Husband married in 1993 and that until 2002, they lived in a barn apartment on land owned by Ms. Braddy. Husband did not work steadily and Wife supported their family on her income. Wife testified that between 1993 and 1997:

> [Ms. Braddy] was in search of two tracts of land in Williamson County, where we could stay close to this part of the county, and she was going to give us a tract of land to build on and she was going to get another tract right beside it where she could build her own home, because she wanted to be beside us. At that time we were—I was pregnant and she was looking forward—I was having a girl, and she was looking forward to having her grandchildren next door, plus being close to us.

Ms. Braddy purchased real property and Wife and Husband made plans to construct the House. Wife applied for a construction loan, but "couldn't get approved because I didn't have enough income." So she asked Ms. Braddy to co-sign on the loan and Ms. Braddy did. Wife testified: "[Ms. Braddy] told me that she would co-sign on the loan, and the agreement was that it was my house, that I was to make all the mortgage payments. I was to make every one of them. There was no question, it was my home, and I was to make all the payments." Wife testified that she did make all the payments until

Ms. Braddy paid the mortgage off in full after Wife filed for divorce.

Wife testified that prior to the closing on the construction loan, Ms. Braddy told Wife:

> that she had went to her attorney's office, which was Cathy Johnson, and had added my name to the deed. And the reason I can't—well, she had to do that in order for us—that was a requirement of the mortgage company. And she did that and told me that she had done that.

Wife went to the Register of Deed's office after she filed for divorce and discovered that her name was not on the deed after all.

Wife filed for divorce in January of 2005. She made the January and February 2005 mortgage payments on the house. When Wife called the mortgage company regarding the March payment, she was told that the debt had been paid in full by Ms. Braddy. Wife moved out of the House after learning this.

At trial, Ms. Braddy testified:

> I'm not trying to take every single thing away from [Wife]. I think she's entitled to some, but definitely not the whole thing. It wasn't her house. She keeps calling it her house. The house was for [Husband and Wife's children, my grandchildren]. And, no, I don't think she deserves the whole thing. Absolutely not.

At the conclusion of the trial, the Trial Court entered an order on the jury's verdict on January 27, 2006 awarding Wife a judgment of $99,200.00 against Ms. Braddy. Husband and Ms. Braddy filed motions to alter or amend or for a new trial, which the Trial Court denied. Husband and Ms. Braddy appeal to this Court.

## Discussion

Although not stated exactly as such, Husband and Ms. Braddy raise four issues on appeal: 1) whether the Trial Court erred in excluding evidence regarding Wife's extra-marital affairs; 2) whether the Trial Court erred in entering an in personam judgment against Ms. Braddy rather than an equitable lien on the realty; 3) whether the Trial Court erred in granting the divorce when the Marital Dissolution Agreement failed to describe the real estate issues involved in the companion lawsuit; and, 4) whether the Trial Court erred in holding that Husband could not tell the jury that he owned an equitable interest in the House. Wife asks this Court to hold this appeal to be frivolous.

■ We first consider whether the Trial Court erred in excluding evidence regarding Wife's extra-marital affairs. The Trial Court granted Wife's motion in limine holding that the parties could not introduce any evidence regarding Wife's extra-marital affairs during the trial regarding the House. No offer of proof was made regarding Ms. Braddy's excluded evidence.

■ In *Thompson v. City of LaVergne*, this Court stated:

An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn.Ct. App.1987). Reviewing courts cannot make this determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 106 Tenn. 450, 452, 61 S.W. 766 (1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn.Ct.App.1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim.App.1989). Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn.1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn.Ct. App.1991). Appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn.Ct.App.2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn.Ct.App.1997); *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833–34 (Tenn.Ct.App.1997).

As stated, an offer of proof must contain the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence. Tenn. R. Evid. 103(a)(2). These requirements may be satisfied by presenting the actual testimony, by stipulating to the content of the excluded evidence, or by presenting an oral or written summary of the excluded evidence. Neil P. Cohen, *et al.* *Tennessee Law of Evidence* § 103.4, at 20 (3d ed.1995). Since we are unable to determine the substance of . . . [the excluded] testimony and whether that testimony would have affected the outcome of the trial, the failure of the defendant to make an offer of proof constitutes a waiver of the right to challenge the exclusion of this testimony. *Hatton v. CSX Transportation, Inc.*, 2004 Tenn App LEXIS 412, Tenn.App. No. E2003–01831–COA–R3–CV, 2004 WL 1459391 (Tenn.Ct.App. June 29, 2004).

*Thompson v. City of LaVergne*, No. M2003–02924–COA–R3–CV, 2005 WL 3076887, at *9 (Tenn.Ct.App. Nov.16, 2005), *perm. app. denied April 24, 2006.*

No offer of proof was made at trial regarding the substance of the excluded evidence and the specific evidentiary basis

supporting its admission. We are unable to tell from the record before us exactly what evidence would have been admitted and cannot assume that the evidence would have been admissible and that it would have affected the outcome of the trial. The Trial Court's statements in granting the motion in limine do provide some information as to what the excluded evidence might have been. Likewise, the motion in limine and counsels' arguments on the motion provide some clue as to what this evidence might have been. However, these clues as to what the excluded evidence might have been do not rise to the level of an offer of proof containing the substance of the evidence and the specific evidentiary basis supporting the admission of this evidence. Given this, this issue has been waived.

Additionally, we note that the jury's verdict was for $99,200, an amount equal only to the stipulated equity in the house exclusive of any value of the land owned by Ms. Braddy. Had Ms. Braddy put the real property in Wife's name along with her own, evidence as to whether or not Ms. Braddy would have put Wife's name on the deed if Ms. Braddy had know Wife was having an affair might well have been relevant if Wife then claimed an interest in the land itself. That, however, was not the question placed before the jury. The jury found Wife's sole interest was the equity value of the House itself. Given this, we are unpersuaded that any of the excluded evidence would have affected the outcome of the trial.

■ We turn next to the issue regarding whether the Trial Court erred in entering an in personam judgment against Ms. Braddy rather than an equitable lien on realty. As pertinent to this issue, Tenn. R.App. P. 3 provides:

Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R.App. P. 3(e). This issue was not raised in Ms. Braddy's motion for new trial and, thus, was waived.

■ We next consider whether the Trial Court erred in granting the divorce when the Marital Dissolution Agreement failed to describe the real estate issues involved in the companion lawsuit on the House. Husband argues in his brief that the parties' MDA does not include a disclosure of Wife's asserted rights to the House and "[t]he granting of a divorce upon irreconcilable differences results in a jurisdictionally void final decree, because T.C.A. § 36–4–103 requires a correct, affirmative statement that the parties have resolved *all* property issues resulting from the marriage. . . ."

We find this argument to be disingenuous. Wife's lawsuit against Ms. Braddy on the House was joined with the divorce action well before the MDA was executed by Husband and Wife. Even though the MDA may not specifically mention the pending suit regarding the House, Husband was well aware of Wife's assertion that she was entitled to an interest in the House long before Husband executed the MDA. We note that pursuant to the Trial Court's order, the two cases were "tried as one lawsuit. . . ." Given this, Husband could have insisted upon a statement regarding the potential rights to the House being contained in the MDA, but he did not. Husband cannot now claim that the Trial Court erred when Husband was

aware of all of the facts and failed to take the steps that he now asserts that Wife should have taken. In any event, we are unpersuaded by Husband's argument that the parties' failure to include a property interest in an MDA deprives the Trial Court of subject matter jurisdiction. This issue is without merit.

 We next consider whether the Trial Court erred in determining that Husband could not tell the jury that he claimed an equitable interest in the House. Husband was free to intervene in Wife's lawsuit against Ms. Braddy and assert that he had an interest in the House. Husband chose not to do so. Husband chose, for whatever reason, not to intervene in the House lawsuit so as not to claim any equitable interest in the House against Ms. Braddy, his mother. As Husband was never a party to the House lawsuit, Husband has no standing to contest the jury's verdict and the Trial Court's judgment on that verdict in that lawsuit. As to Ms. Braddy's interest in the House, the jury awarded her what they found her interest in the House to be, $0. Ms. Braddy has no grounds to argue that Husband, a non-party to the lawsuit who chose not to intervene and participate in the House lawsuit, actually owned a part of the interest awarded to Wife. Ms. Braddy's interest in the House itself as found by the jury, $0, remains the same regardless of who is entitled to the $99,200 of equity in the House. The Trial Court, therefore, did not err by refusing to allow Husband, who chose not to be a party to the lawsuit concerning the House, to assert an interest in the House during the trial before the jury.

Finally, we consider Wife's issue regarding whether this is a frivolous appeal. " 'A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed.' " *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn.Ct.App.2005) (quoting *Industrial Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn.Ct.App. 1995)). Exercising our discretion, we decline to hold this appeal frivolous.

### *Conclusion*

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Carole Hampton Braddy and Casey Kenyon Hampton, and their surety.