IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 11, 2020 Session

## MARCUS BELTON ET AL. v. CITY OF MEMPHIS ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-003907-14   Robert Samual Weiss, Judge**

_____

### No. W2019-00526-COA-R3-CV

_____

A minority business owner sued the City of Memphis and two city officials alleging that the City wrongfully terminated his service contract and contracted with two non-minority owned companies for similar services in violation of state and federal law. The trial court ruled that the business owner failed to prove that race was a motivating factor in the City's decision. On appeal, the business owner contends that the trial court erred in excluding relevant evidence and refusing to grant a mistrial after opening statement. Finding no reversible error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Michael G. Floyd, Memphis, Tennessee, for the appellants, Marcus Belton and Bigfoot Tire and Trucking.

Mohammed Farraj, Sean Antone Hunt, and Salwa Adnan Bahhur, Memphis, Tennessee, for the appellees, City of Memphis and Martha Lott.

### OPINION

### I.

### A.

Marcus Belton owned and operated Big Foot Tires and Trucking. In 2010, the City of Memphis, through its General Services Division, contracted with Big Foot Tires

to provide 24-hour roadside tire service for all city vehicles. Big Foot Tires replaced flat tires on a wide variety of city vehicles, ranging from fire and sanitation trucks to police cruisers. The City supplied the tires and paid the company a set rate for each service call.

A few months after Big Foot Tires was awarded this initial contract, Ms. Martha Lott was appointed the Director of General Services. She was tasked with restructuring the General Services Division to reduce expenses. To that end, she approved a plan to phase out the City's tire inventory, shifting the cost of maintaining sufficient inventory to an outside vendor. The new model divided the City's fleet into four categories by type of vehicle, i.e. police pursuit, passenger, heavy duty, and specialty. Vendors would have the opportunity to submit bids for both tire supply and service in each category. The new business model went into effect in 2012.

While these changes were afoot, Big Foot Tires continued to provide tire service to the City under the old business model. In 2011, the City and Big Foot Tires signed the contract that is the focus of this litigation. The contract was for tire service only and for a term of one year. At the City's option, the contract could be renewed for two additional one-year periods.

The same year it signed the Big Foot Tires contract, the City eliminated its wrecker service, which reduced the hours that the City's tire warehouse was accessible to outside vendors. At Ms. Lott's request, Mr. Belton agreed to keep a supply of city tires at his shop for after-hours use. The City conducted periodic inventory counts of the consigned tires. Mr. Belton later complained that the inventory requirements were inconvenient and time-consuming.

In 2012, the City solicited bids for "police pursuit tire and repair service," the first contract under the new business model. The City received bids from Big Foot Tires, Southern Tire Mart, and Direct Tire Distributors.[1] Big Foot Tires was the only minority-owned business to submit a bid.

After reviewing the bids, Ms. Lott and her staff recommended offering the contract to the lowest bidder, Southern Tire Mart. The bid received from Big Foot Tires was significantly higher on both supply and service. In fact, Big Foot Tires' bid for tire service alone was 400% higher than its 2011 bid. Ms. Lott later testified that Mr. Belton rebuffed her suggestion that he join forces with a larger company so that he could submit a more competitive bid.

---

[1] Direct Tire Distributors was disqualified because it failed to include a service component in its bid.

On September 12, 2012, the City notified Big Foot Tires that its 2011 contract would not be renewed. And the contract expired on October 31, 2012. Big Foot Tires did not submit any additional bids for the City's remaining tire business.

B.

On September 12, 2014, Mr. Belton filed a complaint against the City, Mayor A.C. Wharton, and Ms. Lott. The complaint alleged that the City and the two city officials, in their individual and official capacities, violated his civil rights and breached his service contract. According to the complaint, the City contracted with Big Foot Tires in October 2010 to provide tire service. This was "a four (4) year commitment composed of a one year contract with 3 year extension option." The City later "advised Belton that it could not continue the contract unless he relocated to a more suitable location." Although Mr. Belton complied with the City's request, the City began to "alter the Fleet Services tire contract specification[s]." The City contracted with "two Caucasian majority Owned firms" to provide substantially the same tire service as Big Foot Tires. And in October 2012, the City notified Mr. Belton that his contract was terminated.

Arguing that the complaint was untimely, the defendants moved to dismiss. The trial court agreed and dismissed the complaint with prejudice. Mr. Belton appealed the dismissal to this Court. *See Belton v. City of Memphis*, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at *1 (Tenn. Ct. App. May 10, 2016). We concluded that the trial court applied the wrong statute of limitations to Mr. Belton's civil rights claims. *Id.* at *6-11. Applying the correct statute, we held that Mr. Belton's civil rights claims were timely filed. *Id.* at *11. So we reversed in part, affirmed in part, and remanded for further proceedings. *Id.* at *13.

After remand, the remaining defendants[2] filed a motion in limine to exclude any evidence "of an agreement between the City and Mr. Belton for a three-year or four-year contract, or, stated differently, a one year contract with a three year extension[]." The court excluded "three contract conversations" as inadmissible parol evidence. But the court allowed Mr. Belton to introduce evidence of post-contract formation discussions.

Immediately after opening statements, Mr. Belton moved for a mistrial. He contended that opposing counsel had raised an affirmative defense during his opening statement that had never been pled. The court refused to declare a mistrial "at this point," indicating that it would reconsider the matter, if necessary, after the parties put on their proof.

At the conclusion of the plaintiff's proof, both defendants moved for a directed verdict. The court granted a directed verdict in favor of Ms. Lott on the issue of qualified

---

[2] The court granted summary judgment to Mayor Wharton.

3

immunity. But the court denied the City's motion. As the City was the sole remaining defendant, the court dismissed the jury. And after the City presented its evidence, the court took the case under advisement.

On February 8, 2019, the court issued an order of judgment in the City's favor. The court concluded that "there was no proof offered to establish that race was a motivating factor in the City's decision to award the contract for tire sales and service to Southern Tire Mart." The court further concluded that Big Foot Tires' performance under the 2011 contract played no role in the City's decision.

## II.

In this appeal, Mr. Belton asks us to review two discretionary decisions—the exclusion of evidence and the refusal to grant a mistrial. *See White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g*, (Aug. 26, 2015) (decision to exclude evidence); *Hunter v. Ura*, 163 S.W.3d 686, 699 (Tenn. 2005) (refusal to grant a mistrial). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.*

### A.

Mr. Belton contends that the trial court excluded relevant evidence based on an incorrect application of the law. In our previous opinion, we held that "the parol evidence rule [is] inapplicable to prevent [Mr. Belton] from asserting that the parties entered into an oral modification of the written contract . . . ." *Belton*, 2016 WL 2754407, at *11. According to Mr. Belton, "the clear import" of this holding is that "evidence of contract negotiations would be admissible as evidence of discriminatory conduct . . . but not as evidence to alter the terms of the contract." *See id.* at *10-11 (discussing the parol evidence rule).

Even accepting Mr. Belton's legal argument, we conclude that the trial court's error, if any, is not reversible. We will not set aside a final judgment based on the erroneous exclusion of evidence unless we determine that the evidence, if it had been admitted, would have affected the outcome. *See* Tenn. R. App. P. 36(b); *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). And while Mr. Belton claims the excluded evidence would have shown discriminatory conduct, he never made an offer of proof. *See* Tenn. R. Evid. 103(a)(2).

4

Under Tennessee Rule of Evidence 103 "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a), (a)(2). An offer of proof provides crucial information to the trial court and creates the necessary record for appellate review. *State v. Torres*, 82 S.W.3d 236, 251 (Tenn. 2002). Without a proper record, we cannot determine whether the exclusion of this evidence "more probably than not affected the judgment." Tenn. R. App. P. 36(b); *see also Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 173-74 (Tenn. Ct. App. 2009).

The court indicated that it was excluding evidence of "three contract conversations." The substance of those conversations is not apparent from the record. While we can glean some clues from the City's motion, these clues cannot substitute for an offer of proof. *See Hampton v. Braddy*, 270 S.W.3d 61, 65-66 (Tenn. Ct. App. 2007). As a reviewing court, we can only determine whether the exclusion of evidence was reversible error if we "know[] what the excluded evidence would have been." *Id.* at 65.

B.

Mr. Belton next argues that the trial court should have declared a mistrial after opposing counsel ambushed him during opening statement with an unpled affirmative defense. Defense counsel told the jury, "What you're going to hear is that Mr. Belton did things that would undermine his own business with the City of Memphis because he couldn't keep that contract going." Mr. Belton claims this statement "was tantamount to asserting the affirmative defenses of express assumption of the risk and/or comparative fault." And because the City never raised either of these affirmative defenses before trial, he was unfairly denied "an opportunity to prepare."

When a trial court has refused to grant a mistrial based on the statements of counsel in opening or closing argument, we will not order a new trial "'unless the argument is clearly unwarranted and made purely for the purpose of appealing to passion, prejudices and sentiment . . . or unless we affirmatively find that such argument affect[ed] the results of the trial.'" *Bradley v. Bishop*, 538 S.W.3d 518, 535 (Tenn. Ct. App. 2017) (quoting *Volner v. Vantreese Disc. Pharmacy, Inc.*, No. 02A01-9712-GS-00298, 1999 WL 350899, at *2 (Tenn. Ct. App. May 28, 1999)). That standard has not been met here. Assuming that counsel's statement was improper, we fail to see how it impacted the outcome of this case. Opening statement is not evidence. *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 732 (Tenn. 1978). The jury was dismissed after the plaintiff's proof. And the judge did not find in the City's favor based on an affirmative defense. *See Teague v. Kidd*, No. E2016-01995-COA-R3-CV, 2017 WL 2299059, at *5 (Tenn. Ct. App. May 25, 2017) (holding that "a single comment made during opening statement" without additional proof did not affect the jury verdict).

5

## III.

The proponent of the excluded evidence did not make an offer of proof.  So even if the trial court erred in excluding evidence, we conclude that the error was not reversible.  We further conclude that the trial court did not abuse its discretion in refusing to grant a mistrial.  So we affirm the judgment of the trial court.

_____
W. NEAL MCBRAYER, JUDGE