IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 2, 2025 Session

## IN RE THE CARL EDWIN OSBORNE, JR. LIVING TRUST, DATED MAY 19, 2020

**Appeal from the Probate Court for Shelby County**
**No. PR027086      Kathleen N. Gomes, Judge**

———————————————————

**No. W2024-01768-COA-R3-CV**

———————————————————

The decedent left a will in which he directed the majority of his property into a trust. The trust named his wife as the trustee. The trust made several specific distributions to wife effective upon the decedent's death, including the grant of life estate interests in certain assets. Several other beneficiaries were designated to receive distributions from the life estate assets upon wife's death. The trust directed its remaining assets into a separate marital trust which provided that all income generated by its property would be distributed to wife. It also provided that the trustee would be required to distribute as much of the principal of the marital trust to wife as she requested in writing and granted her a power of appointment. Several of the remaining trust beneficiaries filed a petition to construe the trust in the Shelby County probate court. They sought an order declaring that the remainder interests of assets in which wife had been granted life estates did not pass into the marital trust. The probate court held that the remainder interests did not pass into the marital trust and wife could not alter or destroy them. Wife appeals. We affirm in part and reverse in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed in Part and Reversed in Part

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. joined. JEFFREY USMAN, J., filed a separate opinion concurring in part and dissenting in part.

Peter D. Baskind and Angela G. Lawson, Memphis, Tennessee, for the appellant, Marion Matsu Osborne, individually and as trustee of The Carl Edwin Osborne, Jr. Living Trust, Dated May 19, 2020.

Jonathan J. Ring, Memphis, Tennessee, for the appellees, Leah Ann Kelley, Morgan

Sinclair Osborne, Olivia Madison Osborne, and Mid-South Christian College.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On May 19, 2020, Carl Edwin Osborne, Jr. established The Carl Edwin Osborne, Jr. Living Trust, Dated May 19, 2020 ("the Trust"). He reserved the right to amend or revoke the Trust in whole or in part. At the time the Trust was established, Mr. Osborne's wife was deceased and he had not remarried. Mr. Osborne had three children: Leah Ann Obsorne Kelley, Carl Edwin Osborne, III, and Andrew Davis Osborne. Mr. Osborne married Marion Matsu ("Wife") on May 27, 2021. Shortly thereafter, Mr. Osborne created a will and restated the Trust. The will provided that the entirety of Mr. Osborne's probate estate would pass into the corpus of the Trust.

The Trust is comprised of several articles. Article Two identifies Mr. Osborne's children and provides certain information relevant to the Trust's administration. Andrew Osborne died prior to the establishment of the Trust, and it appears his interests were instead designated to pass to his daughters, Morgan Sinclair Osborne and Olivia Madison Osborne. Carl Osborne, III, was specifically disinherited because he and Mr. Osborne had "previously discussed and agreed to a transfer of [Mr. Osborne's] stock from Datamed, LLC, to him in lieu of a distribution from [the] trust." Article Three provides that Wife is to serve as the trustee upon Mr. Osborne's death. Article Six provides for several specific distributions to be made upon Mr. Osborne's death. First, it directs the trustee to distribute Mr. Osborne's automobile to Wife. Article Six further directs the trustee to distribute life estates to Wife in the following property: (1) the income derived from Mr. Osborne's Epiphany Cardio Service stock, (2) the couple's primary residence, and (3) a time share. Article Six does not identify the owners of the remainder interests in those assets but does contain a residuary distribution clause that provides, "[a]ny property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles." Article Seven establishes a separate marital trust. The creation of the marital trust was contingent on Wife surviving Mr. Osborne. The marital trust is to be comprised of "the remaining trust property," which is the pivotal language at issue on appeal, as the parties dispute whether this encompasses the remainder interests of the assets in which Wife had been granted life estates. Article Seven states that the trustee "shall" distribute all net income derived from the assets of the marital trust to Wife and permits the distribution of "as much of the principal of the [m]arital [t]rust to [Wife] as she requests in writing." Article Seven also grants Wife a testamentary general power of appointment over the principal and undistributed income of the marital trust. If Wife fails to exercise the general power of appointment prior to her death, the remaining balance is to be administered "as provided in Article Eight."

- 2 -

Article Eight is entitled "Specific Distributions upon Death of Survivor" and directs the trustee to make specific distributions of $10,000 to each of Mr. Osborne's grandchildren living at the time the survivor of Mr. Osborne and Wife dies. These distributions are to be made "from [the] remaining trust property not distributed under prior Articles" of the Trust. Article Eight also makes a specific distribution to Mid-South Christian College in the form of "the remainder of the Epiphany Cardio Stock or the remaining sale proceeds" and the time share property. The Article directs the trustee to "distribute all remaining trust property not distributed under this or prior Articles of this trust as provided in the Articles that follow." Article Nine provides that, after making the specific devises listed in Article Eight, the trustee "shall administer and distribute [the] remaining trust property (not distributed under prior Articles of this instrument), or other trust property allocated to this Article, under the terms of this Article." Article Nine provides that the property is to be divided into "shares." The Trust directs a 1/3 share to Leah Ann Osborne Kelley, a 1/3 share to Morgan Sinclair Osborne, and a 1/3 share to Olivia Madison Osborne. The Trust also provides that if any of these beneficiaries predecease Wife, her share will be distributed pro rata to the surviving class members.

Mr. Osborne died on September 17, 2021. Wife was named as the personal representative of Mr. Osborne's estate, and it appears that the majority of his assets passed into the Trust.[1] Subsequently, Wife contacted Morgan Osborne. Wife informed Morgan that, after her death, the residence would pass "to the Estate which is you, Olivia and Leah Ann." She asked if they would "consider selling the house now instead of waiting" until she died and pay her "a percentage of the sale amount to give up [her] [l]ife [e]state[.]" However, Wife later retained legal counsel, who contacted these beneficiaries and claimed that, while Wife owned a life estate in the property, she also controlled the remainder interest as it had passed into the marital trust. Counsel stated that Wife intended to sell the house, distribute the life estate proceeds to herself, and request for the remainder to be distributed to her from the marital trust. On August 31, 2023, Leah Ann Kelley, Morgan Osborne, and Olivia Osborne filed a petition to construe the trust. The petitioners argued that Wife, "whether in her role as trustee or beneficiary, ha[d] no ability to alter the remainder interest in [the residence] through distribution to herself from the Osborne Trust, exercise of a general power of appointment, or by any other means." They contended that Wife's interpretation of the Trust document would defeat the intent of Mr. Osborne to grant her life estates in the property at issue.[2] The petition also noted that Mid-South Christian College and Mr. Osborne's other grandchildren had interests in the additional life estate property. Subsequently, Mid-South Christian College joined the cause of action and sought the same declaration be made for the Epiphany Cardio Stock and the time share property.

---

[1] Some of Mr. Osborne's assets had designated beneficiaries and did not pass into the estate or the trust.

[2] These petitioners later filed an amended version of this petition. The petition was amended to permit the filing of an Abstract and Notice Lien Lis Pendens to be recorded at the Register's Office of Shelby County, Tennessee. No additional claims or theories of recovery were raised.

The additional grandchildren were joined as parties to the litigation.[3]

The parties engaged in discovery. Wife served a subpoena to take the deposition of Anthony Bradley, the attorney who drafted the Osborne trust. The petitioners likewise served a subpoena duces tecum on Mr. Bradley. A transcript of the deposition is not contained in the record, but it appears that Mr. Bradley was deposed. Afterward, the petitioners filed a motion in limine to exclude all extrinsic evidence. They argued that the Trust was not ambiguous and therefore, extrinsic evidence was not admissible to aid in its interpretation. In the alternative, the petitioners argued that any ambiguity that existed was a patent ambiguity and therefore, extrinsic evidence was not appropriate to aid in its resolution. Wife filed a response opposing the motion in limine but stated that she did not "disagree that there is no ambiguity in the Trust." The trial court granted the motion in limine and excluded Mr. Bradley's testimony.

A hearing took place on August 20, 2024. The probate court entered an order construing the Trust on November 15, 2024. The trial court determined that Mr. Osborne had intended to provide for Wife during her life by granting her life estates in the property at issue and by placing additional property into the marital trust. However, the court also determined that he did not intend for the other beneficiaries to receive nothing. The court pointed to Mr. Osborne's decision to pass only life estate interests to Wife and "the clear language . . . as provided in Articles 8 and 9" that directed the remainder interests to the beneficiaries after Wife's death. The probate court found that the residuary distribution section in Article Six demonstrated that Articles Eight and Nine controlled the remainder interests of the life estate property whereas Article Seven focused on the creation of a separate trust. The court also found that Wife's proffered interpretation would defeat Mr. Osborne's intent. The probate court stated that Wife's interpretation would render "the inclusion of the Marital Trust . . . antithetical" as it would grant her "complete discretion in all interests of the estate[.]" Likewise, the court found that Wife's interpretation would leave the terms of Article Six largely "irrelevant and misleading" and would render its "inclusion of th[e] residuary distribution section . . . moot." Additionally, the trial court stated that Wife's reading would essentially result in Mr. Osborne having disinherited Ms. Kelley and Olivia and Morgan Osborne. The probate court held that this "ma[de] no sense" as Mr. Osborne disinherited one of his sons explicitly in Article Two and, therefore had he intended to disinherit the other beneficiaries, would have done so in the same manner. All in all, the probate court determined that Wife held life estates in the property and the petitioners held vested remainder interests. Therefore, the interests were not subject to Wife's discretion as part of the marital trust and she was unable to "alter or destroy" them. Wife filed this appeal.

---

[3] Later, the parties came to an agreement regarding the sale of the marital residence. A consent order permitting the sale was entered on September 26, 2023. The sale generated net proceeds of $319,340.91. Ms. Osborne was permitted to keep those proceeds equivalent to the value of her life estate, and the remaining $232,634.41 was deposited with the Shelby County probate court clerk.

## II. ISSUES PRESENTED

The appellant has presented the following issues on appeal, which we have slightly reframed:

1. Whether the probate court erred when construing the terms of the Trust by not allocating the remainder interests of the life estate property into the marital trust.
2. Whether the probate court erred when it determined that the appellees held vested remainder interests in the life estate property.
3. Whether the probate court erred when it determined that the marital trust was not a beneficiary of the Trust.
4. Whether the probate court erred by excluding the testimony of Mr. Bradley.

For the following reasons, the judgment of the chancery court is affirmed in part and reversed in part.

## III. DISCUSSION

As its resolution will influence our assessment of the remaining issues, we first consider Wife's issue regarding the trial court's decision to exclude the testimony of Mr. Bradley. Importantly, "a trial court's decision on a motion in limine is subject to the abuse of discretion standard of review." *Old Republic Life Ins. Co. v. Woody*, 652 S.W.3d 418, 425 (Tenn. Ct. App. 2022). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)) (alterations present in original).

Wife claims that Mr. Bradley's testimony should not have been excluded because, she claims, the trial court determined the trust document was ambiguous and "there can be little doubt that testimony from Mr. Bradley could have been helpful[.]" However, Wife has not submitted an offer of proof explaining the content of Mr. Bradley's testimony or its effect on the trial court's decision. As we have previously explained:

> [w]hen excluded evidence consists of oral testimony, 'it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible.' *State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986). A trial court's erroneous exclusion of evidence only requires reversal if that evidence would have affected the outcome of the trial if it had been admitted, and a reviewing court cannot make such a determination 'without knowing what the excluded evidence would have been.' *Jernigan v. Paasche*, 637 S.W.3d 746, 758 (Tenn. Ct. App. 2021)

(quoting *Hampton v. Braddy*, 270 S.W.3d 61, 65 (Tenn. Ct. App. 2007)). 'Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error.' *Id.* (quoting *Hampton*, 270 S.W.3d at 65). The offer of proof must contain 'the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence,' and this may be satisfied by presenting the actual testimony, stipulating to the content of the excluded evidence, or presenting a summary of the excluded evidence. *Id.* (quoting *Hampton*, 270 S.W.3d at 65). An appellate court '"will not reverse a trial court's ruling excluding evidence if the appellant fails to make an offer of proof regarding the substance of the evidence and the supporting evidentiary basis to support its admission."' *Mitchell v. City of Franklin*, No. M2021-00877-COA-R3-CV, 2022 WL 4841912, at *14 (Tenn. Ct. App. Oct. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr. Auth.*, No. 2010-01438-COA-R3-CV, 2011 WL 251210, at *2 (Tenn. Ct. App. Jan. 13, 2011)). A party's failure to make an offer of proof '"constitutes a waiver of the right to challenge the exclusion of [the] testimony."' *Jernigan*, 637 S.W.3d at 758 (quoting *Hampton*, 270 S.W.3d at 65). Thus, determining whether a party waived an issue by failing to make a timely offer of proof is a 'threshold issue.' *Mitchell*, 2022 WL 4841912, at *14.

*Blount v. Blount*, 720 S.W.3d 295, 324-25 (Tenn. Ct. App. 2024), *appeal denied* (Mar. 13, 2025) (some alterations present in original). No offer of proof is contained in the appellate record. The record does contain Wife's response in opposition to the petitioners' motion in limine. While this response does reference the deposition of Mr. Bradley, it does not provide a summary of the deposition itself or otherwise explain the evidentiary basis for Mr. Bradley's testimony. Likewise, a copy of the deposition is not included in the appellate record.

Similarly, it appears that no offer of proof was made in response to the trial court's decision to grant the motion in limine. During the hearing, the trial court explained that it intended to construe the Trust "based on the document itself." Counsel for Wife stated that his "main concern" was whether witnesses were going to be called to testify regarding Mr. Osborne's intent in drafting the Trust. The trial court responded, "[n]o witnesses today. No witnesses, period." The petitioners' counsel stated that he had no intent to call witnesses. Wife's counsel stated that he was "far less concerned about the order [granting the motion in limine]" having received "clarification" that no witnesses would be presented. No further attempts to explain the significance or evidentiary basis of the testimony were made. On appeal, Wife has made no effort to explain the evidence or what ambiguity it would resolve. Accordingly, because no offer of proof was made, we are unable to determine what effect, if any, the inclusion of the testimony would have had on the outcome of the case. *Blount*, 720 S.W.3d at 324. Therefore, the issue is waived on

appeal. *See id.* at 325.

We now consider Wife's three remaining issues. While she has presented these issues separately, each depends on the interpretation of the trust document and disposition of the remainder interests of the property in which she has been granted life estate interests. Therefore, we address the issues in tandem.

As this is a non-jury case, we review any findings of fact "*de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see In re Est. of Fletcher*, 538 S.W.3d 444, 448 (Tenn. 2017). "There is no presumption of correctness, however, as to the trial court's legal conclusions." *In re Est. of Fletcher*, 538 S.W.3d at 448. "The interpretation of trust language . . . [is an] issue[ ] of law, which Tennessee appellate courts review *de novo* with no presumption of correctness." *In re Est. of Bone*, 677 S.W.3d 644, 650 (Tenn. Ct. App. 2023) (citing *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 252 (Tenn. 2017)).

The parties agree that Wife holds the discretion to distribute both the income and principal of the marital trust to herself. They only dispute what property passed into the marital trust. Wife claims that the "unassigned remainder interests" passed into the marital trust pursuant to the language of Article Seven which provides the "remaining trust property" is to be held in the marital trust.[4] Wife argues that, because no remaindermen were named in Article Six, the Trust retained the interests in the property and those interests passed into the marital trust as they were not distributed in Article Six. She relies heavily on the "remaining trust property" language contained in Article Seven. She contends this language demonstrates that the future interests passed into the marital trust, and therefore, are under her "unfettered discretion." She further argues that the probate court's interpretation of the Trust did not give effect to Mr. Osborne's intent to provide for her after his death.

Conversely, the petitioners argue, and the probate court held, that neither the life estates nor the remainder interests passed into the marital trust. They claim that the present and future interests of the life estates must be separated in order for Mr. Osborne's intent in creating the Trust to be fulfilled. They claim that to permit the remainder interests to

---

[4] Wife claims that the failure of the life estate leaves the grantor with the "remainder interests" in the property because they "ha[d] nowhere else to go." However, when a party grants a life estate and retains the future interest, a reversionary interest is created rather than a remainder interest. *See Manhattan Sav. Bank & Tr. Co. v. Bedford*, 30 S.W.2d 227, 230 (Tenn. 1930) (quoting 21 C.J.S., "Estates," § 179, p. 1016). ("'An estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him.'") Such interests are vested, and therefore, "assignable." *Id.* at 231. Accordingly, while Wife identifies the Trust as the holder of the "remainder interests," she actually argues that the Trust held reversionary interests in the life estate property which it later distributed to the marital trust.

come under the full discretion of Wife would essentially result in a merger of the interests and would render "the creation of the life estates . . . meaningless[.]" They also claim that Mr. Osborne's decision to create life estate interests and to provide specific directions as to the disposition of the life estate property after Wife's death demonstrates his intent to care for Wife during her life "and then to provide for his other beneficiaries via the remainder interests[.]"

We interpret the terms of a trust "in much the same way we interpret contracts or wills." *Harvey ex rel. Gladden*, 532 S.W.3d at 261 (citing *Marks v. S. Trust. Co.*, 310 S.W.2d 435, 437-38 (Tenn. 1958)). *See* Tenn. Code Ann. § 35-15-112 ("The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property."). As our Supreme Court has explained:

> the important thing in the construction of the trust instrument is to determine the intention of the settlor as evidenced by all the provisions of the instrument, giving no portion any greater emphasis than any other. In determining this intention we cannot follow any hard and fast rule but each case must be considered on its own bottom. The peculiar facts and circumstances and so forth, are considered to determine what is this intention. It is not necessarily so much the language that is used by the settlor as it is his or her evident intention which governs.

*Marks*, 310 S.W.2d at 438 (internal citations omitted). *See Harvey ex rel. Gladden*, 532 S.W.3d at 261; *Williams v. Hardison*, 704 S.W.3d 807, 816-17 (Tenn. Ct. App. 2024). Likewise:

> when a controlling or predominate purpose of the testator is expressed, it is the duty of the court to effectuate that purpose, and to construe all subsidiary clauses so as to bring them into subordination to such purpose. The language of a single sentence is not to control as against the evident purpose and intent shown by the whole will.

*Moore v. Neely*, 370 S.W.2d 537, 540 (Tenn. 1963). *See also Williams v. Est. of Williams*, 865 S.W.2d 3, 6 (Tenn. 1993). Therefore, our primary endeavor will be to discern Mr. Osborne's intent based upon what was written and to effectuate that intent.

We find that Mr. Osborne's intent is made evident by the terms of the Trust. The Trust identifies the takers of both the present and the future interests of the various pieces of life estate property. While not identified immediately after the creation of the life estates, the remaindermen are identified in Articles Eight and Nine. In interpreting a trust, the intention of the grantor "'is to be garnered from the scope and tenor of the whole [document].'" *In re Estate of Vincent*, 98 S.W.3d 146, 150 (Tenn. 2003) (quoting *Podesta*

*v. Podesta*, 189 S.W.2d 413, 415 (Tenn. 1945)). *See Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980) (quoting 3 Restatement of Property, § 242 (1940)) (stating that the writer's "intent is normally derived by examining 'the language employed in [the] conveyance, read as an entirety and in the light of circumstances of its formulation'"). We find Mr. Osborne's initiative in directing the future interests to be indicative of his intent. Mr. Osborne dedicated pages of the Trust explaining to whom the future interests were to pass after Wife's death. Likewise, the Trust leaves the trustee with no discretion regarding to whom the various future interests will pass. Similarly, Articles Eight and Nine are restricted in their operation until after the death of Wife, and therefore, cannot concern the present possessory interests of the property. Additionally, the language used in the Trust demonstrates that Mr. Osborne did not intend for Articles Eight and Nine to act as remote contingencies, as that very subject is considered in Article Ten. As the remainder interests were disposed of by those provisions of the Trust, they did not constitute "remaining trust property" as cited by Article Seven.

We also find that Mr. Osborne's distribution of his automobile demonstrates his intention for Wife to take only life estate interests in the property at issue. In Article Six, Mr. Osborne granted Wife a fee simple interest in the automobile using clear and direct language. Obviously, he did not employ that same language when distributing the life estate interests. It would have been illogical for him to use restrictive life estate language to convey Wife interests in this property but then to grant her "unfettered discretion" over the property in the ensuing article. In attempting to effectuate Mr. Osborne's intent, we are persuaded by the plain reading of the terms used in making the distributions. *See Burton v. Kinney*, 231 S.W.2d 356, 358 (Tenn. 1950) (quoting Rood on Wills, 2d Ed., § 413) ("All doubts must be resolved in favor of [the settlor] having meant just what he said. The courts have no right in such cases to resort to fanciful or conjectural construction, grounded on the circumstances of his property, his family, or himself.") Wife's construction of the conveyance is strained because it requires us to interpret Mr. Osborne to have granted her "unfettered" control over the trust property, despite the language included in the document that restricts her interests to life estates. Had he intended for Wife to hold such control over the life estate property, he could have conveyed it to her in fee simple. Mr. Osborne used the term "life estate" and we believe this demonstrates that he intended for Wife to hold the present right to possession of the property, but not the future rights associated with the property. *See Sherrill v. Bd. of Equalization*, 452 S.W.2d 857, 858 (Tenn. 1970).

Additionally, Wife's interpretation places undue importance on a single provision of the Trust. She relies heavily on the phrase "remaining trust property" of Article Seven and argues that this, when combined with the implicitly created reversionary interests, demonstrates she has "unfettered discretion" over the future interests of the life estate property. However, as stated above, "[t]he language of a single sentence is not to control as against the evident purpose and intent shown by the whole [trust]." *Moore*, 370 S.W.2d at 540. Wife's reliance on this single provision of the Trust is unconvincing when

compared to the weight of the remaining trust language, as Mr. Osborne went to great lengths in describing to whom the future interests in the property were to pass upon the death of the survivor. Further, Wife essentially argues that the future interests of the life estate property were reversionary interests created by the failure of the Trust to direct the future interests. However, she also claims that the trust document itself then directed those interests to the marital trust. It is incongruous to argue that the document failed to account for the future interests through its silence but then intended to direct those same future interests through the use of an explicit term. Relying on Mr. Osborne's silence does not weigh in favor of him having intended to grant Wife such control over the property at issue when compared with his explicit intent as evidenced by the remainder and plain language of the Trust. *See Burton*, 231 S.W.2d at 358.

Wife also claims that the trial court's interpretation renders various terms of Article Seven meaningless. We disagree. We favor constructions that give effect to all the words and terms of a trust. *See McClure v. Keeling*, 43 S.W.2d 383, 384 (Tenn. 1931) (explaining that every word contained in a testamentary document is presumed to have meaning and a construction giving effect to all of a document's terms is to be favored over one disregarding certain terms). Wife claims that the petitioners' interpretation renders the powers granted to her in Article Seven to distribute the principal and income of the marital trust meaningless. However, while a comprehensive list has not been provided on appeal, it appears that additional property was directed into the Trust and passed into the marital trust. Wife maintains her various powers over the property contained in the marital trust and therefore, the provisions have meaning.[5] Conversely, as explained above, we agree with the petitioners' contention that Wife's proffered reading would leave the terms of

---

[5] The trust contains a schedule of property which we have reproduced as follows:

**Schedule A**

7755 Hunters Run Drive, Germantown, Tennessee 38138

This assignment includes all of my real, personal, tangible and intangible property located in the United States, whether separate property or community property and whether acquired before or after the execution of this instrument[.]

Obviously, this is only a generic description of Mr. Osborne's property. It certainly is not exhaustive, as several pieces of property are discussed in Article 6 which are not specifically listed in this schedule. Clearly, when read together, Schedule A and Article 6 demonstrate that more property could have been passed into the trust at Mr. Osborne's death beyond those items discussed in Article 6. While the distributions in Article 6 were specific as to the "real property . . . used by my wife as her principal residence," automobile, Ephinay stock, and time share, the only generalized category of property disbursed was the tangible personal property. Notably, the trust explicitly excludes property the trustee "determines to be part of any business or business interest owned by me or my trust." Therefore, there is a distinct possibility, and perhaps a likelihood, that additional property was included in the categories of real property and intangible property. If so, such property passed into the marital trust.

- 10 -

Article Six largely meaningless. Here, Mr. Osborne quite plainly granted Wife life estate interests in the property. The function of a life estate is to split the rights of present enjoyment and future enjoyment among multiple parties. *See Sherrill*, 452 S.W.2d at 858. Because Mr. Osborne used the term life estate, we can infer that he intended to dispose of the present and future interests separately. Under Wife's reading, she has been granted both the life estate interests and sole control over the disposition of the future interests of the property. This would render the creation of the life estates meaningless, as it would result in both the present and future interests of the life estate property being held under the "unfettered discretion" of one party. Meanwhile, the petitioners' construction separates the present and future interests and gives effect to the life estate language used by permitting Wife to enjoy the present possession of the property, while reserving the rights of future enjoyment for the other beneficiaries.

We find it telling that the trust document identifies the petitioners as those to whom the future interests in the life estate property will pass. From this, we derive Mr. Osborne's intent to provide for Wife during her life, but for those assets to eventually pass to the other beneficiaries. This intent would be defeated if we were to adopt Wife's reading of the trust document. The petitioners' construction is plainer and gives more credence to Mr. Osborne's intent. *See Burton*, 231 S.W.2d at 358. Reading the Trust as a whole, Mr. Osborne clearly intended for Wife to receive the benefits of this property during her life, but for his grandchildren, Mid-South Christian College, and Ms. Kelley to receive the benefits upon her death. *In re Estate of Vincent*, 98 S.W.3d at 150 (quoting *Podesta*, 189 S.W.2d at 415). Accordingly, it would be against the evident purpose of the Trust to hold that a single provision contained in Article Seven grants Wife such extensive power over the property at issue. *Moore*, 370 S.W.2d at 540. Therefore, we affirm the trial court's determination that the remainder interests of the subject property did not pass into the marital trust but were directed to the various beneficiaries described in Articles Eight and Nine.

The appellant also raised an issue on appeal regarding whether the probate court erred when it determined that the appellees held vested remainder interests in the life estate property. We must reverse the trial court's determination that each of these remainders are vested remainders. The language used in drafting the Trust results in some of the remainders being contingent. A contingent remainder "is only the possibility or prospect of an estate, which exists when what would otherwise be a vested remainder is subject to a condition precedent, or is created in favor of an uncertain person or persons." *Sands v. Fly*, 292 S.W.2d 706, 710 (Tenn. 1956) (citation omitted). *See Rinks v. Gordon*, 24 S.W.2d 896, 897 (Tenn. 1930) (explaining that a remainder "is contingent, and not vested, whenever the persons who are to enjoy the remainder are to be ascertained at the time the preceding estate fails, and are not ascertained at the time the preceding estate and the remainder estate are created"). Conversely, "[a] remainder is vested if, at every moment during its continuance, it becomes a present estate, whenever and however the preceding freehold estates determine." *Sands*, 292 S.W.2d at 710. We address each of the remainders

in turn.

First, we consider the specific devises made in Article Eight. The first set of devises states that, upon the death of the survivor of Mr. Osborne and Wife, the trustee "shall distribute $10,000 to each of [Mr. Osborne's] grandchildren living at the time of the death of the survivor . . . . For the purposes of this distribution my grandchildren shall be determined at the time of the death of the survivor[.]" By the terms of the document, these remainders are contingent on the grandchildren being alive at the time Wife dies. If a grandchild now living predeceases Wife, they are excluded from the class. Accordingly, these remainder interests cannot be vested, as the ability to take is contingent upon surviving Wife and therefore, has been "created in favor of [ ] uncertain [ ] persons." *Sands*, 292 S.W.2d at 710. *See Rinks*, 24 S.W.2d at 897 (holding that a remainder interest was contingent where "the interest of the persons named [was] made dependent upon their survival of the life tenant").

Conversely, Mid-South Christian College holds a vested remainder. The Trust specifies no condition that must be met for the college to take upon Wife's death. Rather, the Trust specifies that, even if Mid-South Christian College is no longer in existence at the time Wife dies, its remainder interest will pass to its successor in interest. This demonstrates Mr. Osborne's intent for Mid-South Christian College to receive the future interest of the property upon Wife's death without condition. *See Taylor v. Dickerson*, 67 S.W.2d 137, 137-38 (Tenn. 1934) (holding that the inclusion of the words "or assigns" demonstrated the testatrix's intent for the interest in certain property to vest in her children immediately upon her death). However, because certain specific devises are to be made to Mr. Osborne's grandchildren living prior to the Epiphany stock and time share being distributed to Mid-South Christian College, the remainder interest in this property is subject to divestment. The number of devises made to Mr. Osborne's grandchildren will impact the amount of property to be taken by Mid-South Christian College. *See Bell v. Hackler*, 365 S.W.2d 900, 901 (Tenn. 1963) (holding that a deed created a remainder interest subject to divestment where the holders of the life estate interest were permitted to convey the property "during their joint lifetime" as the sale would divest the future interest holders of their right to future ownership of the property). Therefore, while Mid-South Christian College holds a remainder that is vested, it is a vested remainder subject to divestment.

Lastly, we consider the distributions to Ms. Kelley, Ms. Morgan Osborne, and Ms. Olivia Osborne. Article Nine compels the trustee to "divide [the] remaining trust property" into equal "1/3 shares" for each beneficiary. However, if one beneficiary predeceases Wife, her share does not pass to her heirs or other successor in interest, but rather, shall be shared by the surviving class members. Therefore, each beneficiary's right to take is contingent on surviving Wife. This renders each beneficiary's remainder a contingent remainder. *See Rinks*, 24 S.W.2d at 897. While there is a class of three persons designated to take upon Wife's death, it is impossible to ascertain which members will take because it is impossible to determine which will survive Wife. *See id.*, (holding the remainder estate

created by the grantor's will "was contingent, because, at [the testator's] death, when the will took effect, the persons among whom the remainder estate was to be divided were 'dubious and uncertain'; the interest of the persons named being made dependent upon their survival of the life tenant"). If one or two of the members predecease Wife, the interest or interests will pass instead to the survivor or survivors pro rata. If all three predecease Wife, then the property will pass according to the terms of Article Ten. Accordingly, Ms. Kelley, Ms. Morgan Osborne, and Ms. Olivia Osborne hold contingent remainders in the trust property.

However, having determined that the remainders of the life estates created for the benefit of Wife are held by the petitioners, whether those remainders are contingent or vested is not relevant to the primary issue. Wife is still unable to "alter or destroy" them through administration of the marital trust, because the remainders are not part of the marital trust.

## IV. CONCLUSION

For the foregoing reasons, the ruling of the probate court is affirmed in part and reversed in part. Costs of this appeal are taxed to the appellant, Marion Matsu Osborne, for which execution may issue if necessary.


s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE